## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ORLANDO ROBINSON,

      Petitioner,

                        Case No. 12-14686

   v.                  HON. TERRENCE G. BERG

CINDI CURTIN,

      Respondent.

_____/

## OPINION AND ORDER DENYING
## PETITION FOR A WRIT OF HABEAS CORPUS,
## DENYING A CERTIFICATE OF APPEALABILITY, AND
## DENYING PERMISSION TO APPEAL *IN FORMA PAUPERIS*

This matter is before the Court on Petitioner Orlando Robinson's petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. Petitioner was convicted in the Wayne Circuit Court of two counts of first-degree premeditated murder, MCL § 750.316; four counts of assault with intent to commit murder ("AWIM"), MCL § 750.83; and one count of possession of a firearm during the commission of a felony ("felony-firearm"), MCL § 750.227b. As a result of these convictions, Petitioner is currently serving a sentence of life for each murder conviction and sentences of 30-to-60 years for each AWIM conviction, all running concurrently with each other, and a consecutive 2-year sentence for the felony-firearm conviction.

The petition raises five claims: (1) Petitioner's trial was rendered unfair by the admission of a stipulation that he had a prior felony conviction supporting the felon in possession charge; (2) the jury was also erroneously informed, during the

jury selection process, of a prior conviction for conspiracy to commit unarmed robbery; (3) the prosecutor committed misconduct; (4) there was insufficient evidence presented at trial to support Petitioner's convictions; and (5) Petitioner's in-court identification was tainted by an unduly suggestive pre-trial identification procedure.

The Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability and deny permission to proceed *in forma pauperis* on appeal.

## I.    Facts and Procedural History

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> This case concerns a shooting following a high school party in Detroit. On January 17, 2009, DeMarco Johnson and his girlfriend, Aysha Smith, hosted a high school party at Masonic Hall ("the hall"), located at 14183 Wyoming Street, Detroit. Terrell Hicks arrived at the hall around 6:00 p.m. to work security for the high school party with three other men. Hicks's job was to control the crowd, check the doors, and check the people entering and exiting the hall. The crowd began arriving around 7:30 p.m. to 8:00 p.m. Included among the crowd was Dominique Hunter, Johnson's friend and defendant's cousin.

> At some point, Hunter and her friends got into an argument with another group of six or seven girls. After Hicks observed hands flying and head movements, he walked over to the groups and broke them apart. However, Hunter continued to argue, so Hicks began to escort her to the front door. Before Hicks could take Hunter outside, Johnson told Hicks to let Hunter remain inside. Immediately after the argument ended, Dajuhn Griffin saw Hunter begin to argue with Abdur Moffet and another person. Griffin, Johnson, and Hicks then observed Hunter walk away from her group of friends, take out her cell

2

phone, and place a call. After Hunter ended her phone conversation, she returned to the party. Hunter denied calling anyone after the fight.

Meanwhile, Jonathan Brown, who was defendant's friend, testified that on January 17, 2009, he was with defendant at a house . . . in Detroit. Brown and defendant left the house that evening to go to the hall after defendant told Brown that he had gotten a call from Hunter, his cousin, informing him that she had gotten slapped at the hall. Brown agreed to go to the hall because he wanted to be there to help defendant if a fight broke out.

Defendant and Brown were patted down and searched upon arriving at the hall. No weapons were found on their persons. Johnson observed Hunter approach defendant and hug him. After defendant and Hunter spoke, defendant and his friends walked around the party. Hunter denied seeing defendant at the hall. Soon after arriving at the hall, defendant and his friends got into an argument with ten of Johnson's friends. Hicks and the other security guards went over to the two groups of boys. Hicks and Johnson told everyone to calm down, but defendant did not listen. Defendant kept yelling and acting in an aggressive manner. At that point, defendant was disturbing the party, and Johnson told Hicks to take defendant outside. Hicks grabbed defendant and turned him around to throw him outside. While Hicks was escorting defendant to the front door, Griffin heard defendant say that he would "shoot" the place up.

Outside of the hall, Johnson heard defendant say, "I got guns for [n* * * * *s] like you all." After Hicks finally pushed defendant out of the front door, defendant began stating that he needed to come back inside and get his female cousin. Hicks told defendant that defendant could not reenter to get his cousin. Hicks also told defendant that he would have to wait outside until his cousin came out. Hicks then shut the door on defendant.

About ten minutes later, sometime between 11:00 p.m. and 12:00 a.m., the hall owner shut the party down and told everyone to leave. Hicks opened the front door to let people outside. When Hicks opened the front door, he saw defendant standing by himself next to the front door.

Marshall Ross testified that once he was outside, he saw Moffet and defendant arguing in the parking lot while Hicks stood in between them. As Ross walked by defendant to go home, defendant suddenly took a swing and tried to punch Ross. Ross and defendant then began

3

fist fighting. While fighting, Ross and defendant backed up against a large snow pile in front of a brick wall at the end of the hall's parking lot. Ross hit defendant in the face during the fight. The fight ended when Ross knocked defendant over the snow pile and defendant fell to the ground. Afterward, defendant and Ross exchanged words. Ross did not want to fight defendant again, so he turned his back on defendant and began to walk away, towards the front of the hall.

As Ross was walking away from him, defendant pulled a gun from his hip and began shooting at the crowd. After defendant shot a couple of bullets, Johnson and Ross heard defendant's gun click because it jammed. Defendant then continued to shoot additional bullets. Defendant did not aim as he shot into the crowd. In total, defendant fired the gun six or seven times and seven people were injured: Demetrius Campbell, Edward Jones, Steven Williams, Moffett, Brandon Baker, Ross, and Griffin. Williams and Jones ultimately died as a result of gunshot wounds to their backs.

After the shooting was over, Johnson, Hicks, and Griffin saw defendant running away from the hall's parking lot. No one saw a weapon in defendant's hands as he was departing.

*People v. Orlando Robinson*, Case No. 296565, 2011 WL 1816459, at *1–2 (Mich. Ct. App. May 12, 2011).

Based on this evidence the jury found Petitioner guilty, and he was subsequently sentenced as indicated above.

Following his conviction and sentence, Petitioner filed a direct appeal in the Michigan Court of Appeals, raising the following claims:

I. Informing the jury that the defendant is charged with felon in possession of a weapon violates the defendant's right to be tried by his jury, if he elects not to testify, without his jury knowing of his prior felony conviction and denies the defendant his right to due process and a fair trial pursuant to US Const. Ams. IV, V.

II. The trial court denied the defendant his due process rights to a fair trial when the court informed the jury during voir dire of what the defendant's prior criminal conviction was, and it was ineffective

4

assistance of counsel for defense counsel to not motion the court for a mistrial based on the judge's actions.

III. Repeated prosecutorial misconduct throughout the trial denied the defendant his due process rights to a fair trial, requiring reversal of his convictions pursuant to US Const Ams V, XIV; Mich Const 1963, Art 1, Am. 17.

IV. The great weight of the evidence at both the conclusion of the prosecutors case in chief and following the defendants witnesses was insufficient to warrant a conviction and therefore both the denial of the defendants motion for a directed verdict and the conviction itself were in error.

V. The use of an unduly suggestive lineup denied the defendant his due process rights to a fair trial pursuant to US Const Ams. VI, XIV, Mich Const 1963, Art 1, §§ 17, 20.

(Dkt. 10, Ex. 19, Appellant's Br. on Appeal, ECF pp. 77-78).

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *Robinson*, 2011 WL 1816459. Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied the application because it was "not persuaded that the questions presented should be reviewed by" it. *People v. Robinson*, 804 N.W.2d 330 (Mich. 2011) (table). Petitioner then commenced the present action.

## II.    Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

6

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, --- U.S. ----, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S.Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state

7

court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

### III.    Analysis

### A.  Evidence of Petitioner's Prior Felony Conviction

Petitioner's first two claims assert that his trial was rendered fundamentally unfair when the jury was twice informed that he had a prior felony conviction.  In his first claim he asserts that the court erroneously allowed admission of a stipulation that Petitioner had a prior felony and was therefore prohibited from possessing a firearm.  His second claim asserts that the trial court erroneously stated during the jury selection process that Petitioner was charged with possession of a firearm with a prior conviction for conspiracy to commit unarmed robbery. Respondent asserts that the claims are procedurally defaulted and without merit.

An inquiry as to whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68.  "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as

fundamental.'"  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (additional citations omitted)).

Petitioner was charged with felon in possession of a firearm.  The fact that Petitioner was a felon was therefore a necessary element of that offense, and evidence of that fact was admissible under Michigan law.  *People v. Nimeth*, 236 Mich. App. 616, 627 (1999).  Furthermore, counsel's decision to stipulate to the prior felony was a matter of reasonable trial strategy.  In fact, failing to enter into the stipulation may have resulted in more damaging evidence regarding the nature of the prior felony coming before the jury.  *See, e.g., Bradley v. Birkett*, No. 03-70740, 2006 WL 212024, at *3 (E.D. Mich. Jan. 27, 2006).

With respect to Petitioner's second claim, at the beginning of the jury selection process, the following exchange occurred:

> THE COURT: The next count alleges weapons firearms possession by a felon and specifically alleges the Defendant did use a firearm when ineligible to do so because he had been convicted of—conspiracy robbery unarmed?
>
> [Defense counsel David] CRIPPS: Your Honor, can we approach?
>
> THE COURT: I think that's mistaken.
>
> THE COURT: Ladies and gentlemen, I've been handed an amended information, all right.
>
> * * *
>
> THE COURT: All right. The next count, ladies and gentlemen, the allegation is weapons firearms possession by a felon. And it specifically alleges the Defendant did use a firearm when ineligible to do so because he had been convicted of a prior specified felony and the requirements for regaining eligibility had not been met. Correct, gentleman. [sic in transcript, perhaps for "Correct, gentlemen?"]

[Wayne County Assistant Prosecuting Attorney David] BRAXTON: That's correct.

MR. CRIPPS: Yes, your Honor.
THE COURT: So, disregard what I read to you initially and partially. That's how that count reads, okay.

* * *

Satisfied with the reading, gentlemen?

MR. CRIPPS: Yes, your Honor.

MR. BRAXTON: Yes, your Honor.

(Dec. 8, 2009 Trial Tr. at 36–38.)

Accordingly, the record shows that immediately after inadvertently stating that Petitioner was charged with possessing a firearm after having been previously convicted of conspiracy to commit unarmed robbery, the trial court corrected its mistake and instructed the jury to disregard the prior statement.

In *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional trial error, the appropriate harmless error standard to apply is whether the error had a "substantial and injurious effect or influence in determining the jury's verdict." Here, the misstatement was brief and quickly corrected by the trial court. There is no indication in the record that the jury would have been unable to follow the court's instruction to disregard his statement. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987) ("[J]uries are presumed to follow their instructions.")

10

Accordingly, Petitioner's first two habeas claims are without merit.

## B. Prosecutorial Misconduct

Petitioner's third claim asserts that the prosecutor committed misconduct by making improper comments during closing arguments and by the manner in which he cross examined prosecution witness Allen Henderson.

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181(1986) (citing *Donnelly*); *Parker v. Matthews*, --- U.S. ----, 132 S.Ct. 2148, 2153, 183 L. Ed. 2d 32 (2012) (confirming that *Donnelly/Darden* is the proper standard).

With respect to the claim regarding the cross examination of Henderson, the Michigan Court of Appeals found that the questioning was proper:

> During its cross-examination of Henderson, the prosecution inquired whether Henderson was aware of when the trial was initially scheduled to begin. After defense counsel objected and moved for a mistrial, the trial court denied the mistrial, but granted defense counsel's request for a curative instruction. After reviewing the record in context, we conclude that defendant was not denied a fair and impartial trial because the prosecution was making a good faith effort to admit evidence. The question about the initial trial date was intended to support an inference that it was odd for someone with exonerating evidence like Henderson to wait until the month before trial to come forward, especially given the fact that this was not the

11

first trial date. Prosecutorial misconduct cannot be based on good faith efforts to admit evidence. *Noble*, 238 Mich. App at 660. "The prosecutor is entitled to attempt to introduce evidence which he legitimately believes will be accepted by the court, as long as that attempt does not actually prejudice the defendant." *Id*. at 660–661. Even if the prosecution's statement was improper, the trial court's instruction to the jury cured any potential prejudicial effect.

*Robinson*, 2011 WL 1816459, at *4.

This decision did not result in an unreasonable application of the established standard. During the cross examination of Henderson, the prosecutor attempted to establish that Henderson did not come forward with his exculpatory testimony regarding the shooting until about a month prior to trial. To suggest that the witness was not credible, the prosecutor then asked Henderson if he knew trial had been originally scheduled months prior, suggesting that if the information was true, Henderson would have come forward sooner. Defense counsel objected, asserting that the delay in the trial date was attributable to the prosecution and that the witness had in fact, come forward previously. The prosecutor then explained his rationale for the question:

> Your Honor, I think as going to credibility of a person making the statement, I believe I have the right to ask about whether or not it's believable that a statement was never made until trial date or a week before trial date. Me pointing out -- I did not say whose fault it was that the trial did not go forward in July. I never -- that was not my point. My point simply was that this person comes in, he makes a statement in November 19, we would have never heard any of this information, but here it is December something and the statement is just being induced, like, a week before trial. And I, you know, I didn't quibble with it. I accepted it when defense gave me the week or two, whatever it was before trial, I didn't quibble with that. But I think I can go into whether or not his statements are credible based on that. And that's all I'm doing, your Honor.

12

(Dec. 15, 2009 Trial Tr., 115).

Nevertheless, the trial court sustained the objection and instructed the jury to disregard the question. The prosecutor's explanation reasonably allowed the Michigan Court of Appeals to conclude that the question was asked in good faith and did not require reversal. In *Frazier v. Cupp*, 394 U.S. 731, 736-737 (1969), the Supreme Court held that while a prosecutor's good or bad faith is not controlling in determining whether a defendant has been deprived of the right of confrontation, a prosecutor acting in good faith can defeat a claim of prosecutorial misconduct. Petitioner has presented no evidence that the prosecutor did not ask the question at issue in good faith.

Moreover, assuming that the question was improper, Petitioner is not entitled to habeas relief in light of the fact that the question and comments were isolated, and the judge instructed the jury to disregard them. *See Akins v. Warren*, 362 F. App'x 508, 514 (6th Cir. 2010).

Next, Petitioner asserts that the prosecutor committed misconduct during closing arguments. Specifically, he states that the prosecutor repeatedly characterized the defense witnesses as being liars that had been told to change their testimony. The Michigan Court of Appeals rejected the claim as follows:

> While the prosecution cannot vouch for a witness's credibility in a manner that suggests that it has special knowledge regarding the witness's truthfulness, *Bahoda*, 448 Mich. at 276, the prosecution is free to argue any reasonable inferences that may arise from the evidence, *People v. Ackerman*, 257 Mich. App. 434, 450; 669 NW2d 818 (2003). Prosecutors may also argue that a defendant's witnesses are

13

not worthy of belief. *Dobek*, 274 Mich. App. at 67. After reviewing the comments in context, it is clear that the prosecution was asking the jurors to evaluate the credibility of all the witnesses based on the evidence using their common sense and experience, and the prosecution was not confined to arguing using only the blandest of possible terms. Furthermore, a curative instruction can eliminate the possible prejudicial effect that may have resulted from prosecutorial misconduct. *People v. Nantelle*, 215 Mich. App. 77, 87 (1996). The trial court instructed the jury that: defendant was innocent until proven guilty; the prosecution must prove each element beyond a reasonable doubt; only sworn testimony and admitted exhibits were evidence; the attorneys' statements, questions and arguments were not evidence; and the trial court's rulings, questions, and instructions were not evidence. Thus, any possible prejudicial effect from the prosecution's closing and rebuttal arguments was eliminated. Defendant has failed to show plain error requiring reversal occurred.

*Robinson*, 2011 WL 1816459, at *4.

This determination was reasonable. It is well-settled that it is improper for a prosecutor to express his or her own personal opinions as to a witness's credibility. *United States v. Young*, 470 U.S. 1, 17-19 (1985); *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005). Such statements are improper because they can convey the impression that the prosecutor has evidence not presented to the jury which supports the charges against the defendant, thereby infringing upon the defendant's right to be judged solely based upon the evidence presented, and because the prosecutor's opinion carries with it "the imprimatur of the Government" and may induce the jury to trust the Government's judgment rather than its own. *Young*, 470 U.S. at 18-19; *see also Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008).

The prosecutor in this case did not improperly express his personal belief that the defense witnesses were liars. Rather, the prosecutor argued that those

14

witnesses should not be believed based upon the substance of their testimony compared to the other evidence presented at trial. A prosecutor may argue reasonable inferences from the evidence, *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000), and may argue from the facts that a witness is or is not worthy of belief. *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000). The prosecutor did not imply that she had personal knowledge or undisclosed evidence of guilt. *See Cristini*, 526 F.3d at 902 ("Although the prosecutor called these witnesses 'liars,' this argument that they were lying was based on evidence in the record, and was not framed in such a way that would suggest the prosecutor knew of any outside evidence."). Petitioner has failed to show that the prosecutor's comments were improper or that they deprived him of a fundamentally fair trial.

## C. Sufficiency of the Evidence

Petitioner's fourth claim asserts that insufficient evidence was presented at trial to sustain his conviction. Essentially, Petitioner argues that because four defense witnesses testified that they saw another man shoot into the crowd, the prosecutor did not prove beyond a reasonable doubt that he was the person who committed the crimes.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct appeal, review of a sufficiency of the evidence challenge must focus on the question of whether "after viewing the evidence in the light most favorable to the

15

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324, n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205 (citing *Jackson*, 443 U.S. at 319). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id*.

The Michigan Court of Appeals rejected this claim on the merits as follows:

In reviewing the record in the light most favorable to the prosecution, a rational trier of fact would be able to find that there was sufficient evidence to prove beyond a reasonable doubt that defendant had the intent to kill. The record reveals that after defendant received a phone call from Hunter, he and his friend went to the hall. Upon arriving, defendant walked around the hall before engaging in a verbal argument inside the hall with several of Johnson's friends. When Hicks escorted defendant outside, defendant threatened to shoot several people. Once the party ended and the crowd was outside,

16

defendant engaged in another verbal argument before starting a fist fight with Ross. After defendant's fist fight with Ross ended because defendant fell over a snow pile at the end of the hall's parking lot, defendant stood up and pulled a gun out from his waist. Defendant immediately began shooting the gun several times at random into the crowd. This evidence is sufficient to prove defendant had the intent to kill. Even though defendant submitted contradictory evidence, including four witnesses who testified that they saw Duncan shoot into the crowd, it was for the trier of fact to determine the credibility of the proofs presented. *People v. Lemmon*, 456 Mich. 625, 642–643 (1998); *People v. Avant*, 235 Mich. App 499, 506 (1999). The jury heard the evidence and determined each witness's credibility. A rational trier of fact would be able to conclude beyond a reasonable doubt that defendant had the intent to kill when he fired gunshots into the crowd.

*Robinson*, 2011 WL 1816459, at *6–7.

This decision did not involve an unreasonable application of the governing standard. "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 132 (2010) (quoting *Jackson*, 443 U.S. at 326). Affording the state court's findings of fact a presumption of correctness, this Court concludes that the Michigan Court of Appeals' decision that sufficient evidence was presented to sustain Petitioner's conviction did not "result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the

17

Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Petitioner is not

entitled to federal habeas corpus relief with respect to this claim.

## D. Suggestive Identification Procedure

Petitioner's final claim asserts that his in-court identification by prosecution

witnesses violated his right to due process because of an unfairly suggestive pretrial

identification procedure.

Due process protects the accused against the introduction of evidence which

results from an unreliable identification obtained through unnecessarily suggestive

procedures.  *Moore v. Illinois*, 434 U.S. 220, 227 (1977).  There is a two-step

procedure for determining whether an identification can be admitted consistent

with due process.  The first step is to determine whether the identification

procedure was impermissibly suggestive.  *Ledbetter v. Edwards*, 35 F.3d 1062, 1070-

71 (6th Cir. 1994).  If it was, the second step is to determine whether the

identification nonetheless has sufficient indicia of reliability considering all the

circumstances.  *Id*.  Five considerations bear on the reliability of an identification:

> 1. the witness's opportunity to view the criminal at the time of the
> crime;
>
> 2. the witness's degree of attention at the time of the crime;
>
> 3. the accuracy of the witness's prior description of the defendant;
>
> 4. the witness's level of certainty when identifying the suspect at the
> confrontation; and,
>
> 5. the length of time that has elapsed between the time and the
> confrontation.

18

*Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).

A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive. It is only after a habeas petitioner meets this burden of proof that the burden shifts to the state to prove that the identification was reliable. *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004) (citing *English v. Cody*, 241 F.3d 1279, 1282-83 (10th Cir. 2001)).

The Michigan Court of Appeals rejected the claim on the merits as follows:

> In reviewing the photographic lineup, there was nothing so impermissibly suggestive about the other five participants in the photographic array that rendered defendant's photograph substantially distinguishable to the witnesses. The photographic lineup contained six color photographs of young African-American males, who were of similar height and weight. Three of the participants had similar amounts of facial hair, while the other three participants were clean shaven. While defendant asserts that the black ring around his white t-shirt and a prominent necklace substantially distinguished his photograph from the others in the photographic array, a review of the lineup does not support defendant's position. Each of the participants was uniquely dressed. Participant number one is the only participant wearing a red button up shirt; participant number two is the only one wearing a black button up shirt; participant number four is the only participant wearing a black hooded sweatshirt; and participants number three and six are the only participants wearing white t-shirts. Additionally, defendant's characterization of the necklace in his photograph as "prominent" is questionable. A review of defendant's photograph reveals that the necklace is rather thin and almost completely blends in with defendant's white t-shirt. Because the clothing of all of the participants in the photographic lineup was varied, the differences in defendant's clothing were not readily apparent and did not substantially distinguish him. We find nothing significantly distinguishing defendant from the other participants when the participants are viewed as a group.
>
> Furthermore, defendant's assertion that because the shooter was described as having darker skin it was unduly suggestive to have

19

lighter skinned participants in the photographic array is without merit. While it is true that participants one and four had lighter skin complexions, participants two, three, and five all had darker skin complexions. These physical differences in the participants relate only to the weight of the witnesses' identifications, and not to their admissibility. *Hornsby*, 251 Mich. App at 466. Thus, the admission of the photographic lineup was proper.

*Robinson*, 2011 WL 1816459, at *7–8.

The state appellate court reasonably rejected Petitioner's claim.  Petitioner fails to show that there was an improper pretrial identification.  Petitioner offered no evidence to the Michigan Court of Appeals or to this Court showing that the composition of the photographic line up or other aspects of the pretrial identification procedures were suggestive.  Due process, therefore, does not require exclusion of the identifications or entitle Petitioner to habeas relief.  *See Perry v. New Hampshire*, 132 S.Ct. 716, 730, 181 L. Ed. 2d 694 (2012) ("[T]he Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement"); *Cameron v. Birkett*, 348 F. Supp. 2d 825, 843 (E.D. Mich. 2004) ("[T]he Supreme Court has never held that an in-court identification requires an independent basis for admission in the absence of an antecedent improper pre-trial identification.").  Accordingly, Petitioner's claim is without merit.

## IV.   Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of

appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336-37. The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of Petitioner's claims. The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because an appeal could not be taken in good faith.

## V.     Conclusion

Accordingly, based upon the foregoing, **IT IS ORDERED** that the Petition for a Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED,** and Petitioner is **DENIED** leave to appeal *in forma pauperis.*

Dated:  June 16, 2014                          s/Terrence G. Berg
                                               TERRENCE G. BERG
                                               UNITED STATES DISTRICT JUDGE

21

**Certificate of Service**

I hereby certify that this Order was electronically submitted on June 16, 2014, using the CM/ECF system; a copy of this Order was also addressed to Petitioner and mailed to 635646 Gus Harrison Correctional Facility, 2727 E. Beecher Street, Adrian, Michigan 49221.

s/A. Chubb
Case Manager